UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIONICIO ALEMON GONZALES,

Petitioner,

CASE NO. 03-CV-74266-DT

v.

JUDGE VICTORIA A. ROBERTS

MAGISTRATE JUDGE PAUL J. KOMIVES

MILLICENT WARREN, WARDEN,

Respondent.

_____/

# REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
       A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
       B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
       C.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
       D.   *Ex Parte Communication with Jury (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
            1.   *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
            2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
       E.   *Ineffective Assistance of Counsel (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
            1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
            2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
                 a. Waiver of Preliminary Examination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
                 b. Failure to Investigate and Present Alibi Defense . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                 c. Admitting Petitioner's Guilt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
                 d. Failure to Allow Petitioner to Testify . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
                 e. Failure to Properly Impeach Prosecution's Witness . . . . . . . . . . . . . . . . . . . . . . . . . 20
                 f. Failure to Object and Properly Cross-Examine . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
                 g. Vouching for Prosecutor's Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
                 h. Failure to Challenge Habitual Offender Enhancement . . . . . . . . . . . . . . . . . . . . . . . . 24
                 i. Violation of Attorney-Client Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
       F.   *Denial of Motion for New Trial (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
       G.   *Jury Instructions (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
            1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
            2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
       H.   *Sufficiency of the Evidence (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
            1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
            2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
       I.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.    *Procedural History*

    1.    Petitioner Dionicio Alemon Gonzalez is a state prisoner, currently confined at the Thumb Correctional Facility in Lapeer, Michigan.

    2.    On September 10, 1999, petitioner was convicted of one count of delivery of 225-650 grams of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(ii), following a jury trial in the Ingham County Circuit Court.  On October 13, 1999, he was sentenced as a second habitual offender to a term of 25-40 years' imprisonment.

    3.    Following his conviction and sentencing, petitioner filed a motion for new trial in the trial court, raising claims of ineffective assistance of counsel, improper *ex parte* communication with the jury, and newly discovered evidence.  On April 4, 2000, the trial court conducted an evidentiary hearing, at which petitioner presented numerous witnesses in support of his claims.  At the conclusion of that hearing, the trial court denied petitioner's motion for a new trial.

    4.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.    IT WAS REVERSIBLE ERROR FOR THE TRIAL JUDGE AND THE PROSECUTOR TO CARRY ON CONVERSATIONS WITH JURY MEMBERS OUTSIDE OF THE COURTROOM DURING THE TIME WHEN THE JURY WAS DELIBERATING.

        II.    DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO FILE A MOTION FOR PRELIMINARY EXAMINATION, FAILED TO INVESTIGATE ALIBI DEFENSE, MISUNDERSTOOD AIDING AND ABETTING THEORY AND FASHIONED A DEFENSE THAT ADMITTED DEFENDANT'S

2

GUILT, INFORMED THE JURY OF DEFENDANT'S PRIOR CRIMINAL RECORD, AND REVEALED CONFIDENTIAL AND DAMAGING INFORMATION TO THE COURT WITHOUT REVIEW AND APPROVAL OF DEFENDANT THAT ADVERSELY AFFECTED DEFENDANT'S SENTENCE.

III.   THAT THE TRIAL COURT'S DENIAL OF DEFENDANT'S MOTION FOR NEW TRIAL, WHERE AMONG OTHER ISSUES, DEFENDANT HAD A VIABLE ALIBI DEFENSE WHERE MONICA GONZALES TESTIFIED THAT DEFENDANT WAS AT HOME DURING THE TIME OF THE INCIDENT, WAS AN ABUSE OF DISCRETION.

IV.   IT WAS REVERSIBLE ERROR FOR THE COURT TO INSTRUCT THE JURY THAT DEFENDANT HAD COMMITTED PRIOR CRIMES, INCLUDING POSSESSION AND DELIVERY OF COCAINE, WHERE THE RECORD SHOWS THAT DEFENDANT WAS NEVER CONVICTED OF POSSESSION OR DELIVERY OF COCAINE.

Petitioner, through substitute counsel, also filed an application for leave to submit a supplemental

brief, raising the following additional claims:

I.   WAS DEFENDANT DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL (1) NEGLIGENTLY WAIVED PRELIMINARY EXAM; (2) FAILED TO INVESTIGATE AND PRESENT ALIBI DEFENSE; (3) EMPLOYED AS A DEFENSE AT TRIAL AN EXPRESSION OF GUILT; (4) NEGLECTED TO UTILIZE AVAILABLE PHONE RECORDS TO IMPEACH PROSECUTION WITNESS AND SUBSTANTIATE DEFENDANT'S CLAIM; (5) FAILED TO ALLOW DEFENDANT TO TESTIFY IN HIS OWN BEHALF; (6) ABANDONED DEFENSIVE CROSS-EXAMINATION; (7) FAILED TO CHALLENGE OR OBJECT TO PROSECUTION'S UNSUBSTANTIATED CLAIMS; (8) VOUCHED FOR THE CREDIBILITY OF THE PROSECUTION'S WITNESSES; (9) FAILED TO CHALLENGE HABITUAL SENTENCE ENHANCEMENT; (10) VIOLATED ATTORNEY/CLIENT PRIVILEGES BY SUBMITTING A SENTENCING MEMORANDUM; AND COMMITTED OTHER NEGLIGENT ERRORS?

II.   WAS DEFENDANT, DIONICIO GONZALEZ DENIED HIS DUE PROCESS RIGHT OF REQUIRING THE PROSECUTION TO PROVE GUILT BEYOND A REASONABLE DOUBT WHERE INSUFFICIENT EVIDENCE WAS PRESENTED TO SUBSTANTIATE EVERY ELEMENT OF THE CHARGED OFFENSE?

The court of appeals denied petitioner's motion for leave to file a supplemental brief. *See People v. Gonzalez*, No. 223338 (Mich. Ct. App. Mar. 21, 2001). The court of appeals found no merit to petitioner's original claims, and affirmed his conviction and sentence. *See People v. Gonzales*, No. 223338, 2001 WL 1404727 (Mich. Ct. App. Nov. 9, 2001) (per curiam).

     5.     Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Gonzalez*, 467 Mich. 860, 651 N.W.2d 914 (2002).

     6.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on October 29, 2003. As grounds for the writ of habeas corpus, he raises the claims that he raised in the state courts on direct appeal

     7.     Respondent filed her answer on April 30, 2004. She contends that petitioner's first and fourth claims–alleging improper *ex parte* communication with the jury and improper jury instructions, respectively–are procedurally defaulted. She also contends that petitioner's second and third claims–alleging ineffective assistance of counsel and improper denial of a new trial, respectively–are without merit. Respondent's answer does not address petitioner's fifth claim, alleging insufficient evidence.

     8.     Petitioner, through counsel, filed a supplemental brief in support of his petition on May 19, 2004.

B.     *Factual Background Underlying Petitioner's Conviction*

     Petitioner's conviction stems from the shipment of a package of cocaine from California to Lansing, Michigan. The trial testimony was accurately summarized by the prosecutor on defendant's appeal to the Michigan Court of Appeals:

The People contended that the defendant arranged the delivery of over 225 grams of cocaine to Lansing, and solicited a man named Todd Lumley to pick it up. (Trial Tr, p 368). Defense counsel argued that the prosecution failed to prove that the defendant was involved in the cocaine shipment. (Trial Tr, pp 133-34, 380). He added that it would be very much out of character for the defendant, a **marijuana** dealer, to dabble in **cocaine**. (Id, pp 134, 393).

The Lansing Federal Express ("Fed-Ex") office allowed narcotics officers to periodically view incoming parcels. At approximately 8 a.m. on March 18, 1998, Trooper David Yount and Deputy Gasper Mendez of the Tri-County Metro Narcotics Squad (TCMNS) visited Fed-Ex to conduct a "spot-check" inspection. (Trial Tr, pp 166, 187, 233). While watching the conveyor belt, they observed a package that was damaged and heavily taped. (Id, p 167). A freight invoice which accompanied the parcel indicated that it was sent by "Rosavel Giljalba" of North Hollywood, California to "Joe Giljalba" at 1008 Dakin Street, Lansing, Michigan the previous day. (Id, pp 168-169, 188; Px 1). Shipping expenses were paid for with cash. The sender did not provide an address or telephone number. (Id, p 217). The package was removed from the conveyor belt. (Id, p 170). The officers ran a computer check on "Joe Giljalba" and could not locate any such person. This led them to believe that the recipient was fictitious. (Id, pp 191-193).

A specially-trained canine sniffed the package and alerted the presence of controlled substances. (Trial Tr, pp 170, 233). A Fed-Ex employee opened the box. The officers observed several layers of wrapping material. (Id, p 171). They confiscated the package and transported it to the TCMNS office, where they unwrapped and photographed its contents. The box housed a Styrofoam cooler which contained several layers of sprayed foam, cellophane, and tin foil. Many of the layers were interspersed with laundry detergent, toothpaste, and motor oil. (Trial Tr, pp 171-173; Px 2-22). Drug traffickers often use these substances to mask the scent of marijuana or cocaine. (Id, pp 175, 227). Officers ultimately found an off-white chalk-like substance, which turned out to be 503 grams of 90% pure cocaine. (Trial Tr, pp 174, 178, 272-274; Px 24, 25, 26).

The officers decided to conduct an undercover "delivery" of the cocaine and arrest the recipient(s). (Trial Tr, pp 180, 244). They obtained an "anticipatory" search warrant which allowed them to enter 1008 Dakin once someone accepted the package. (Id, p 179). Deputy Roy Holliday disguised himself as a deliveryman, and transported the cocaine to 1008 Dakin in a Fed-Ex van at approximately 4 p.m. (Id, pp 180, 245, 278). Surveillance officers say a blue Pontiac Grand Am cruising up and down the street. (Id, pp 229, 277). The vehicle contained several persons. The occupants were conducting "counter-surveillance", i.e., looking for police officers. (Id, pp 277, 280). Three men were inside the house, but none of them would sign for the parcel. One of them told Deputy Holliday to leave the package on the front porch. He complied with this request. (Id, pp 246, 278, 300).

A person identified as Todd Lumley grabbed the box and ran into the back yard of 1008 Dakin, with police officers in pursuit. (Trial Tr, pp 278-279). Lumley was arrested and jailed. (Id, p 331). Two other individuals were inside the house.

5

(Id, p 237).  Officers seized a cellular telephone.  (Id, pp 250-251).

Lumley later agreed to testify against the defendant in exchange for dismissal and reduction of pending charges and a sentence "cap" which spared him from a lengthy prison term.  (Trial Tr, pp 282-283, 306-07).  His testimony was the only evidence which linked the defendant to the seized cocaine.  (Id, pp 312-314, 323).  The People produced no evidence that defendant ever handled it.  (Id, p 221).

Lumley testified that he and the defendant were in the marijuana "business".  The defendant supplied marijuana to him, and he sold it to others.  (Trial Tr, p 285).  These two men shared a similar relationship with cocaine, but in much smaller amounts.  (Id, pp 287, 311, 329).  This testimony was confirmed, at least in part, by Det. William Byrnes.  He explained that, during 1997, the defendant was facing marijuana-related charges, and had attempted–unsuccessfully–to secure a plea agreement by working with the police as an informant.  (Id, pp 136, 145, 154, 155-56).  Det. Byrnes saw evidence that the defendant was involved with marijuana and cocaine.  (Id, pp 154-155).

Lumley testified that, on three or four occasions, he retrieved packages of marijuana for the defendant.  (Trial Tr, pp 285, 287).  The parcels always came from California.  (Id, p 309).  They were delivered to an unoccupied house.  Lumley would go there, grab the package, and deliver it to the defendant.  (Id, pp 286, 333).  The defendant would pay Lumley in cash or marijuana.  (Id, pp 286-287, 297, 314).  He also compensated the owners or tenants of the houses where the parcels were delivered.  (Id, pp 296-297).

At approximately 9 a.m. on March 18, 1998, the defendant met Lumley at a body shop where Lumley worked.  He told Lumley to pick up a package on Dakin Street and gave him a cellular telephone.  (Trial Tr, pp 289-290, 315, 323).  Lumley believed that the package would contain marijuana, based on his past experience with the defendant.  (Id, pp 293, 315).  The defendant never said anything to suggest that the parcel contained cocaine.  (Id, p 293).

Lumley arrived at Dakin Street at approximately noon, and parked his car at the end of the street.  (Trial Tr, p 293).  He and the defendant spoke by telephone five times during the next four hours.  (Id, p 295).  On at least two occasions, the defendant drove down Dakin Street in his blue Pontiac Grand Am.  He was alone the first time.  He had his girlfriend with him the second time.  (Id, pp 295-96).  During one of the trips, the defendant fetched some fast food for Lumley.  (Id, p 297).  During at least one of their telephone calls, they discussed how Lumley was to ultimately transfer the package to the defendant.  (Id, p 298).

Lumley eventually walked to 1008 Dakin and waited in the garage.  The owner, known only as "Tom", subsequently arrived with another male.  Lumley entered the house with them.  (Trial Tr, pp 299, 322).  After the package was delivered, he walked onto the porch and saw it.  He immediately suspected that it contained cocaine, rather than marijuana, because it was so small.  (Id, pp 300-301, 320, 322, 330).  This concerned him greatly.  (Id, pp 301, 316).

The cell-phone went dead, so Lumley returned to his car and plugged it in.  He called the defendant, and was told, "You're gonna get busted.  Throw it over the

fence!"  (Trial Tr, p 301).  He then ran to the porch, grabbed the package, and attempted to get rid of it, but was intercepted by the police.  (Id, pp 301-302).

Lumley testified that he met the defendant at a bar approximately one month after his arrest.  The defendant offered to pay all of Lumley's legal fees if he agreed not to implicate the defendant.  (Trial Tr, pp 305-306).

People's Br. on App., in *People v. Gonzalez*, No. 223338 (Mich. Ct. App.), at 2-6.  Petitioner presented no evidence in his defense.  After several hours of deliberation, the jury convicted petitioner of delivery of between 225 and 650 grams of cocaine, but acquitted him of conspiracy to deliver 225-650 grams of cocaine.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the

benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Ex Parte Communication with Jury (Claim I)*

Petitioner first claims that he was denied a fair trial by improper *ex parte* communications between the trial judge and one or more jurors, and between the prosecutor and one or more jurors, during deliberations. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Procedural Default*

Respondent contends that petitioner's first claim is procedurally defaulted, due to his failure to object to the alleged *ex parte* contact during the jury's deliberations. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly'

9

states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

It is true that the Michigan Court of Appeals determined that petitioner has forfeited this claim based on his failure to object at the time of trial. Notably, however, it is not clear when petitioner or his counsel discovered, or reasonably could have discovered, that the alleged *ex parte* contacts occurred. Although petitioner claimed to have observed one contact, counsel observed the contacts, and neither the trial judge nor the prosecutor informed petitioner or his counsel of any contact with the jury. It was further not clear when exactly the communication occurred, and whether there was sufficient time between the communication and the jury's verdict for counsel to lodge an objection. In light of these facts, it is not clear that Michigan had a firmly established and regularly followed procedural rule requiring an objection to be lodged immediately. For example, in *People v. Hill*, No. 184258, 1996 WL 33349414 (Mich. Ct. App. Oct. 15, 1996) (per curiam), the trial court remanded an *ex parte* communication claim to the trial court for an evidentiary hearing to determine, *inter alia*, "whether defendant was informed of the communication and thereby afforded the opportunity to object." *Id*. at *1. Similarly, although the Michigan Supreme Court has held that an *ex parte* communication claim is subject to waiver, it has found waiver only where the defendant failed to object after being informed about the contact by the trial judge. *See People v.*

10

*France*, 436 Mich. 138, 165, 461 N.W.2d 621, 632 (1990). Indeed, the Michigan Court of Appeals has interpreted *France* as establishing not a rule of waiver *per se*, but rather a rule that a "failure to object when the judge informed counsel of the communication is evidence that the communication was not prejudicial." *Meyer v. City of Center Line*, 242 Mich. App. 560, 565-66, 619 N.W.2d 182, 186 (2000). Further, the time of petitioner's discovery may affect whether he had cause to excuse his procedural default.

This is not to say that the claim may not, in fact, be procedurally defaulted. It is to say, however, that the resolution of this issue is unclear and difficult, as both a legal and a factual matter. While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also, Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). In light of the legal and factual uncertainties regarding this procedural default issue, and in light of the fact that the claim is meritless in any event, the Court should proceed directly to the merits, without first resolving the procedural default issue.

2.      *Analysis*

"'The mere occurrence of an *ex parte* conversation between a trial judge and a juror does not

11

constitute a deprivation of any constitutional right.  The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication.'" *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (quoting *Rushen v. Spain*, 464 U.S. 114, 125-26 (1983) (Stevens, J., concurring in the judgment)).  Thus, to be entitled to relief, a petitioner must show that the *ex parte* communication resulted in prejudice which deprived him of a fair trial.  *See Young v. Herring*, 938 F.2d 543, 557 (5th Cir. 1991) (discussing *Gagnon*, 470 U.S. at 526).

Here, petitioner's claim fails as a factual matter.  After hearing the evidence concerning the alleged *ex parte* communications, the trial court rejected petitioner's claim, concluding that the testimony of petitioner and his father regarding the contacts was speculative and inconsistent.  *See* Mot. for New Trial Tr., at 201.  These findings by the trial court are presumed correct unless petitioner can rebut them by clear and convincing evidence.  *See Rushen*, 464 U.S. at 120; 28 U.S.C. § 2254(e)(1).  Petitioner has offered no such evidence to rebut the trial court's determination.

Further, as the Michigan Court of Appeals noted, "[e]ven if the alleged ex-parte communication occurred, defendant failed to make a firm and definite showing of prejudice." *Gonzalez*, 2001 WL 1404727, at *1, slip op. at 1.  Neither petitioner nor his father testified as to the content of the alleged communications, nor did petitioner present the testimony of any of the jurors who were allegedly exposed to the *ex parte* contacts.  *See People v. Budzyn*, 456 Mich. 77, 91, 566 N.W.2d 229, 236 (1997) (noting that, although a jury verdict may not generally be impeached through juror testimony, "oral testimony or affidavits may . . . be received on extraneous or outside errors, such as undue influence by outside parties.").

Thus, petitioner has failed to establish that any *ex parte* contacts actually occurred, or that

12

if they did occur they were prejudicial and deprived him of a fair trial.  Accordingly, the Court

should conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Ineffective Assistance of Counsel (Claim II)*

Petitioner next claims that he was denied constitutionally effective assistance of counsel at

trial.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of

counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687

(1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's

errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant

by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at

687.  These two components are mixed  questions of law and fact.  *See id*. at 698.  Further, "[t]here

is no reason for a court deciding an ineffective assistance claim . . . to address both components of

the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to

dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course

should be followed."  *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that

counsel's behavior lies within the wide range of reasonable professional assistance.  *See id*.  at 689;

*O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).   "[D]efendant must overcome the

presumption that, under the circumstances, the challenged action 'might be considered sound trial

strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel

is strongly presumed to have rendered adequate assistance and made all significant decisions in the

13

exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

    2.    *Analysis*

    *a. Waiver of Preliminary Examination*

Petitioner first claims that trial counsel negligently waived a preliminary examination. Petitioner's counsel at the time of the pre-trial proceedings, Antoinette Frazho, testified at the evidentiary hearing that the preliminary examination was waived because, at the time, petitioner had signed a cooperation agreement with the state and federal authorities, and it was expected that a plea deal would eventually be reached. *See* Mot. for New Trial Tr., at 19-20, 27, 38. She also testified that petitioner told her that the prosecution's main witness, Todd Lumley, had made a lot of enemies and might not be around for trial, so she didn't want to give the prosecutor an opportunity to preserve Lumley's testimony. *See id*. at 46. The trial court credited Frazho's testimony and concluded that her decision to waive preliminary examination was a reasonable strategic decision.

The trial court's determination was a reasonable application of *Strickland*. Petitioner has failed to show that counsel's decision, based in part on petitioner's own desire to cooperate with the authorities, was anything other than a reasonable strategic decision. By waiving preliminary examination, counsel hoped to buttress petitioner's *bona fides* with the government and secure a favorable plea deal. Counsel also hoped, again based on petitioner's representations, to prevent the prosecutor from preserving Lumley's testimony in the event that he was unavailable at trial. These were reasonable strategic assessments committed to counsel's sound discretion. Further, petitioner

14

cannot show that he was prejudiced by counsel's waiver of the preliminary examination. The prosecution's evidence–which petitioner has offered no reason to believe would have differed significantly from the evidence at trial–would certainly have been sufficient to support a finding of probable cause, and the waiver of a preliminary examination did not deprive petitioner of the opportunity to present any evidence. *See Hall v. Summer*, 512 F. Supp. 1014, 1020 (N.D. Cal. 1981), *aff'd*, 682 F.2d 786 (9th Cir. 1982); *Trombley v. Anderson*, 439 F. Supp. 1250, 1256 (E.D. Mich. 1977) (Feikens, J.), *aff'd*, 584 F.2d 807 (6th Cir. 1978). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Failure to Investigate and Present Alibi Defense

Petitioner next contends that counsel was ineffective for failing to present an alibi defense. Specifically, petitioner contends that his then-wife, Monica Gonzalez, would have testified that he was not in the area of the pickup of the package at the time Lumley made the pickup. At the evidentiary hearing, however, petitioner's trial counsel, Steven Freeman, testified that petitioner never told him that his wife could provide an alibi. *See* Mot. for New Trial Tr., at 123. He also testified that petitioner admitted that he had access to a blue Grand Am, like the one observed in the area during the pick-up, that he knew a package was coming, and that he had phone conversations with Lumley. *See id*. at 81-82, 122-24. Frazho also testified that petitioner admitted he was in the area at the time of the pickup. *See id*. at 31. The trial judge credited this testimony, specifically finding that petitioner never told his attorneys about a possible alibi. *See id*. at 198-99. Petitioner has offered no clear and convincing evidence to rebut the trial court's conclusion, and thus this finding is presumed correct here. *See* 28 U.S.C. § 2254(e)(1).

In light of the trial court's finding that petitioner never told counsel about his potential alibi

witness, counsel cannot be deemed ineffective for failing to investigate and pursue this line of defense. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691. Because petitioner never told counsel about the existence of his alibi witness or a possible alibi defense, counsel cannot be deemed ineffective for failing to pursue this line of defense. *See Bigelow v. Williams*, 367 F.3d 562, 571 (6th Cir. 2004); *McBee v. Harrison*, No. 85-5908, 1986 WL 17555, at *2 (6th Cir. Aug. 12, 1986) (per curiam); *Millio v. Barkley*, 48 F. Supp. 2d 259, 266-67 (W.D.N.Y. 1999). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Admitting Petitioner's Guilt

Petitioner next contends that counsel was ineffective for fashioning a defense theory that admitted his guilt. At trial, counsel informed the jury of petitioner's previous trafficking in marijuana, and elicited testimony to this effect during cross-examination of the prosecution's witnesses. Counsel's defensive theory was that petitioner was involved solely in marijuana and not cocaine, and that in light of this fact and the weakness of Lumley's testimony, the jury should conclude that petitioner was not involved with the delivery of cocaine at issue in the case. *See* Trial Tr., Vol. III, at 383-97; Mot. for New Trial Tr., at 84-86, 102-04. Petitioner contends that this strategy was unreasonable because it severely prejudiced him in the eyes of the jurors, and because it was based on a misunderstanding of aiding and abetting law, under which proof of knowledge of the actual substance delivered is not required. The trial court rejected petitioner's claim, concluding that the strategy was reasonable in light of the evidence, which showed that petitioner was only a minor marijuana dealer. *See* Mot. for New Trial Tr., at 199-200. The Michigan Court of Appeals likewise rejected petitioner's claim. *See Gonzalez*, 2001 WL 1404727, at *1, slip op. at 2. The

16

Court should conclude that these determinations were reasonable.

Petitioner's legal argument–that the defense argument was doomed to failure because proof of knowledge of the substance involved was not required–is incorrect.  As counsel correctly surmised in crafting his strategy, "[t]o support a conviction for delivery of [a controlled substance], the prosecutor must prove that defendant had . . . knowledge of the nature of the substance[,]" *People v. Randle*, No. 197602, 1998 WL 1991166, at *2 (Mich. Ct. App. June 16, 1998) (per curiam), and this applies equally to aiding and abetting claims, *see People v. Mass*, 464 Mich. 615, 628, 628 N.W.2d 540, 548 (2001).  Indeed, the Michigan Supreme Court has explained that "a knowledge instruction is essential . . . in cases wherein there is reasonably raised in the evidence the issue of whether the defendant, particularly an aider and abetter, knows the nature of the substance which he is delivering."  *People v. Delgado*, 404 Mich. 76, 86-87, 273 N.W.2d 395, 399 (1978).  Consistent with this rule of law, the trial court instructed the jury that knowledge on the part of petitioner that the substance was cocaine was essential to a finding of guilt.  *See* Trial Tr., Vol. III, at 413 (describing elements of delivery charge, "[t]hird, that the Defendant knew he was delivering cocaine."); *id*. at 416 (aiding and abetting instruction, "[i]t is not sufficient for the prosecutor just to prove that the Defendant intended to help another in the common unlawful activity of any drug delivery.  It is necessary that the Prosecutor prove beyond a reasonable doubt that the Defendant intended to help someone else commit the charged offense of delivery of 225 grams or more but less than 650 grams of a mixture containing the controlled substance cocaine.").  Thus, contrary to petitioner's argument, counsel's strategic choice was not based on a misunderstanding of state law relating to the elements of the crime.

Nor can it be said that the state court's determination that this was a reasonable strategic

17

decision by counsel was itself an unreasonable application of *Strickland*. Counsel was faced with a case where petitioner's accomplice would testify as to petitioner's involvement, and there was evidence of prior marijuana related convictions in petitioner's past. In light of this evidence, and the lack of any evidence that petitioner had ever been involved with large scale cocaine trafficking, it was not unreasonable to try to paint petitioner as merely a minor marijuana dealer who would never have been involved in such a large scale cocaine transaction. *See United States v. Williamson*, 53 F.3d 1500, 1511-12 (10th Cir. 1995) (counsel not ineffective for conceding that defendant was a drug user who purchased from ringleader of conspiracy, but arguing that she was not a participant in the conspiracy); *United States v. Simone*, 931 F.2d 1186, 1195-96 (7th Cir. 1991) (counsel not ineffective for conceding guilt on substantive drug counts but arguing that evidence did not establish defendant's guilt for more serious conspiracy counts). This is particularly so given that such a lack of knowledge defense, if established, would have resulted in outright acquittal.

The context of lesser included offenses provides a useful analogy. As another Judge of this Court has explained, "[a] defense counsel's concession that his client is guilty of a lesser included offense is a legitimate trial strategy that does not amount to the abandonment of the defendant or a failure by counsel to subject the prosecutor's case to meaningful adversarial testing so as to amount to the denial of counsel." *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1095 (E.D. Mich. 2004) (Gadola, J.) (citing *Haynes v. Cain*, 298 F.3d 375, 381-82 (5th Cir. 2002); *Lingar v. Bowersox*, 176 F.3d 453, 459 (8th Cir. 1999); *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991)). Here, counsel did not even go that far, because he did not concede that petitioner was guilty of any offense for which he had been charged. Rather, he merely argued that petitioner's prior criminal activity was inconsistent with the crimes charged, and thus it was unlikely that he knowingly engaged in a

delivery of cocaine.  In light of the evidence produced at trial, this was a reasonable strategic decision, and the trial court's conclusion was not an unreasonable application of *Strickland*. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d.  Failure to Allow Petitioner to Testify

Petitioner next contends that counsel was ineffective for failing to allow petitioner to testify on his own behalf.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Although petitioner now claims that he actively sought to testify and counsel prevented him from doing so, this aspect of petitioner's claim is not supported by record.  At the evidentiary hearing, petitioner testified only that he was willing to testify at trial, but that counsel advised him against this course of action.  *See* Mot. for New Trial Tr., at 147-48.  The record contains no indication by petitioner that he objected to counsel's strategy at the time, nor did he indicate a desire to testify when counsel rested without presenting any witnesses.  Further, at no point during the trial, particularly when counsel indicated that the defense would present no witnesses, did petitioner indicate that he wished to testify or otherwise object to counsel's decision not to call him. Thus, this is not a case where counsel actively thwarted petitioner's express desire and absolute right to testify on his own behalf.  *See United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000); *United States v. Nohara*, 3 F.3d 1239, 1243 (9th Cir. 1993).  Rather, the only question is whether counsel's advice to petitioner and his strategic decision not to call petitioner were reasonable trial decisions. The Court should conclude that they were.

Counsel testified at the motion for new trial hearing that he feared petitioner's testimony would not be helpful, particularly under the scrutiny of cross-examination and in light of petitioner's

19

prior convictions and statements made to the law enforcement agencies during the time he was cooperating with the authorities. *See* Mot. for New Trial Tr., at 107. This strategic decision was reasonable. Although, as petitioner points out, counsel himself introduced some of petitioner's prior crimes, he was able to do so in a manner which he controlled and guided in furtherance of the lack-of-knowledge defense. Allowing petitioner to testify could have opened up the prior crime inquiry into matters which would have thwarted this strategy. Further, if petitioner testified inconsistently with statements he had made to law enforcement officials, he would have been subject to impeachment with those statements, *see* Mot. for New Trial Tr., at 20-21 (describing cooperation agreement, which provided statements made could be used for impeachment if petitioner lied), which would have both damaged petitioner's credibility and undermined the defense strategy. Counsel could reasonably conclude in these circumstances that more harm than good would come from petitioner's testimony. *See Flood v. Phillips*, 90 Fed. Appx. 108, 118 (6th Cir. 2004); *Matney v. Armontrout*, 956 F.2d 824, 826 (8th Cir. 1992); *United States v. Norwood*, 798 F.2d 1094, 1100 (7th Cir. 1986). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### e. Failure to Properly Impeach Prosecution's Witness

Petitioner next contends that counsel was ineffective for failing to secure telephone records to impeach Lumley's testimony that he and petitioner spoke on the phone several times around the time of the pickup. Originally, the prosecution had intended to introduce the phone records. The prosecution abandoned this plan when what the prosecutor described as a database problem resulted in the phone records showing that all of the calls had occurred at five or six o'clock in the morning, rather than during the afternoon when the pickup was made. The prosecutor informed the court that

he could have the phone company representative "testify to the phone calls but he can't place an hour on them and, without an hour, I'm not going to put him on the stand." Trial Tr., Vol. I, at 182. Petitioner contends that counsel should have seized on this evidence, and used the phone records to impeach Lumley's testimony.

Even assuming that counsel was deficient, however, petitioner cannot show that he was prejudiced by the absence of this evidence. It is true that the phone records could have impeached Lumley's testimony regarding the time of the calls. However, this alone would not have provided the absolute defense that petitioner argues would have been provided. In the first place, the prosecution may have countered with rebuttal evidence tending to show that the phone records were inaccurate, in light of the prosecutor's description of the discrepancy as resulting from a database problem. Second, the phone records did show that there were calls between petitioner and Lumley. Given Lumley's testimony of their joint participation in drug deliveries, even assuming that the calls were in the morning and not in the afternoon as Lumley testified, the evidence of the calls still buttressed the prosecutor's case. Third, the records would not have precluded the fact that petitioner did speak to Lumley around the time of the pickup; they would only have shown that petitioner made no calls from one particular phone. The evidence, in short, would not have provided any significant substantive evidence contradicting the prosecution's case. Rather, it would have impeached Lumley's credibility. However, Lumley's credibility was significantly impeached on cross-examination as it was, and the jury nevertheless chose to believe his testimony. It is therefore not reasonably probable that the result of the proceeding would have been different had counsel introduced this evidence, and it certainly cannot be said that the state court's rejection of this claim amounts to an unreasonable application of *Strickland*. Accordingly, the Court should conclude that

21

petitioner is not entitled to habeas relief on this claim.

### f. Failure to Object and Properly Cross-Examine

Petitioner next argues that counsel was ineffective for failing to object to the prosecution's unsubstantiated claims and for abandoning certain lines of cross-examination. As to the first argument, petitioner contends that many of the prosecution's allegations were unsubstantiated because there was no direct evidence tying petitioner to the cocaine delivery other than the testimony of Lumley. However, for purposes of the prosecutor's arguments to the jury, Lumley's testimony was sufficient to substantiate the prosecutor's allegations. Petitioner was free to argue that Lumley's testimony was not credible, and counsel did do just that, but this alone does not make the prosecutor's arguments improper and subject to objection.

Petitioner also contends that counsel was ineffective for failing to object to Lumley's testimony that he saw petitioner driving a blue Grand Am, and that petitioner dropped some lunch off to Lumley while waiting for the pickup. Petitioner contends that none of the surveillance officers saw a blue Grand Am doing this, and there was no evidence that he was connected to the blue Grand Am. Again, however, there was nothing objectionable in the testimony. Lumley himself testified to these facts, and the evidence was admissible. The most that defense counsel could do was to point out that Lumley's testimony was the sole evidence of these facts, and argue that Lumley's testimony was not credible. Further, counsel testified at the evidentiary hearing that petitioner admitted that he had access to a blue Grand Am, like the one observed in the area during the pick-up, that he knew a package was coming, and that he had phone conversations with Lumley. *See* Mot. for New Trial Tr., at 81-82, 122-24. Counsel reasonably relied on this information in fashioning his defense strategy, which was not to attack petitioner's involvement with the delivery in general, but

to attack his knowledge that the package contained cocaine.

Petitioner also contends that counsel failed to properly cross-examine several witnesses by abandoning certain lines of questioning.  "[C]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002) (Friedman, J.).  "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.; accord Millender v. Adams*, 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002) (Rosen, J.).  Here, the record shows that counsel ably presented extensive evidence on petitioner's behalf, and thoroughly cross-examined the prosecution's witnesses.  That some unidentified questions may have been inartfully phrased, or some particular avenues not fully explored, does not support a finding that counsel's performance was deficient.  *See Millender*, 187 F. Supp. 2d at 872; *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001) (Tarnow, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### g.  *Vouching for Prosecutor's Witnesses*

Petitioner next argues that counsel was ineffective for vouching for the prosecutor's witnesses.  During closing argument, counsel stated:

> What evidence did you hear?  We've heard from police persons.  As a matter of fact, I think Mr. Gonzalez and I both know the police persons who testified in this case.  They're all honorable people.  They have a tough job.  I wouldn't want to do it.  I don't think you would want to do it.  I think we can believe everything the police told us.  We're not arguing with that and we're not arguing with the testimony of the chemist.  You ought to believe what the chemist told you too.

Trial Tr., Vol. III, at 382.

Petitioner cannot show that this argument amounted to deficient performance, or that he was prejudiced by counsel's argument.  As petitioner repeatedly makes clear throughout his petition, the

police provided no evidence with respect to petitioner's involvement in the delivery. The only such evidence came from Lumley. Thus, counsel was merely arguing that, even if the jury believed everything the police said, it should still not convict because the only evidence of petitioner's involvement came from Lumley, and Lumley's testimony did not establish that petitioner knew there was cocaine in the box. Because the police witnesses offered no direct evidence of petitioner's involvement, but only testified as to the circumstances of the pickup involving Lumley, petitioner was not prejudiced by counsel's concession that the officers were credible. Furthermore, counsel reasonably could have concluded that his strategy of attacking Lumley's credibility would have better success if he conceded the credibility of prosecution witnesses whose testimony could not be called into question. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### h. Failure to Challenge Habitual Offender Enhancement

Petitioner next contends that counsel was ineffective for failing to object at sentencing to the habitual offender enhancement. Petitioner's sentence was enhanced pursuant to § 333.7413, which in relevant part provides that "an individual convicted of a second or subsequent offense under this article may be imprisoned for a term not more than twice the term otherwise authorized or fined an amount not more than twice that otherwise authorized, or both." MICH. COMP. LAWS § 333.7413(2). Petitioner contends that he was not subject to enhancement under this provision because the prior criminal convictions occurred after the offense at issue in his trial was committed. Therefore, petitioner contends, counsel should have objected to the enhancement.

Petitioner cannot show, however, that any objection would have impacted the length of his sentence. Petitioner's argument implicitly relies on the Michigan courts' interpretations of

24

Michigan's general habitual offender statutes. These statutes all speak of a person who, having been previously convicted, "*commit[s]* a subsequent felony." MICH. COMP. LAWS §§ 769.10(1), .11(1), .12(1) (emphasis added). Because the language of these statutes requires commission of a felony after previous convictions, the enhancement is not applicable where the enhancing conviction occurs after the commission of the offense at issue. *See generally*, *People v. Preuss*, 436 Mich. 714, 461 N.W.2d 703 (1990). Petitioner, however, was sentenced under the more specific habitual offender statute relating to drug crimes. This statute, as quoted above, does not speak of commission, but only of convictions. Indeed, the statute makes clear that only the respective dates of the convictions, rather than the dates of commission, are relevant: "For purposes of subsection (2), an offense is considered a second or subsequent offense, if, before *conviction* of the offense, the offender has at any time, been convicted under this article[.]" MICH. COMP. LAWS § 333.7413(5). Based on this clear language, the Michigan Court of Appeals has held:

> In order to enhance a defendant's sentence under that provision, all that is required is that the defendant was convicted of another specified drug offense before the conviction for which he is being sentenced. Although the convictions must follow one another, the statute includes no temporal requirement regarding the sequence of the crimes and, in the absence of any authority to do so, we decline to add such a requirement.

*People v. Roseburgh*, 215 Mich. App. 237, 239, 545 N.W.2d 14, 15 (1996); *see also*, *People v. Poole*, 218 Mich. App. 702, 709-11, 555 N.W.2d 485, 489-90 (1996).

Petitioner does not allege that the convictions upon which his enhanced sentence were based occurred after his conviction in this case, only that they occurred after the offense itself was committed. Because the enhancement provision requires only a temporal sequence with respect to the convictions themselves, rather than the conduct upon which the convictions were based, any objection to the enhancement would have been meritless. Thus, counsel was not deficient in failing

to object, and petitioner was not prejudiced by counsel's failure.  Accordingly, the Court should

conclude that petitioner is not entitled to habeas relief on this claim.

### i. Violation of Attorney-Client Privilege

Finally, petitioner contends that he was denied the effective assistance of counsel when

counsel violated the attorney-client privilege in his sentencing memorandum.  In the memorandum,

counsel stated:

> For reasons of trial strategy, Defendant did not testify.  However now that Defendant's trial is over, he seeks to aid the Court in determining a fair and just sentence, and so now answers the question "How did you know the package was arriving, yet not know it contained the controlled substance cocaine?"
>
> Defendant had previously been involved in the receipt and distribution of marijuana in the Lansing area.  This involvement extended at least three years prior to his Trial on the instant charges and was connected, in large part, with Defendant's marijuana and alcohol addition.  During the course of his involvement in marijuana dealings, Defendant became aware of several large-scale drug dealers from outside the Lansing area who directed his activities.  The names of these individuals and their connection to Defendant have been fully revealed by Defendant to Tri-County Metro Narcotic agents on more than one occasion which can be verified by the prosecutor at sentencing.  For purposes of Defendant's security, this Memorandum will refer to them merely as A, B, and C.
>
> In September 1997, Defendant and Todd Lumley were arrested after a traffic stop.  Some 30 pounds of marijuana were seized by Lansing Police.  The marijuana had been supplied by A.  Confronted with the loss of 30 pounds of marijuana, Defendant was told he must now pay A and his associates for their marijuana.  Defendant could not pay.
>
> Defendant was charged with Possession with Intent to Deliver Marijuana, pled guilty before the Honorable Peter D. Houk and was sentenced to six months in jail.  Between his September 1997 arrest and eventual plea and sentencing, the pressure placed on Defendant by A, B and C increased significantly.
>
> Defendant was confronted by telephone, at work and at his home.  He was physically threatened and extorted with threats of harm to himself, his wife, and his children.  He was confronted by A, B and C while each was armed with automatic weapons and a sawed off shotgun.  Defendant was forced to turn over to A, his Harley Davidson motorcycle worth an estimated $19,000.00, representing his only asset.
>
> In early 1998, desperate, afraid and still unable to pay, Defendant wanted out of his situation and the marijuana business.  He genuinely feared for his life and the safety of his family.  Unfortunately, Defendant could not merely "retire" from this

26

type of operation.  Defendant's acquaintance, Co-defendant LUMLEY, on the other hand, wanted to take Defendant's place.  Defendant agreed.  Defendant introduced Co-defendant LUMLEY to A, B and C and vouched for his credibility.

On March 18, 1998 at 6:30 a.m., Defendant received a telephone call from A.  Defendant was told a package had already been shipped and was arriving in Lansing around noon.  Defendant was to call A when the package arrived to receive further instructions.  Defendant told A in no uncertain terms that he did not want to pick up the package, that Co-defendant LUMLEY was taking care of everything now and that he would tell Co-defendant LUMLEY to pick up the package for A.  A responded by reminding Defendant A had still not been paid in full for the lost marijuana, and ordered Defendant to make sure the package was picked up, "or else I'll be sleeping with your wife tonight."  Defendant met with Co-defendant LUMLEY at the auto body shop and told him the package was scheduled to arrive at noon that day.  He told Co-defendant LUMLEY this was LUMLEY's chance to "take care of things from now on."  Once the package had arrived, he would telephone A to ask for further instructions and relay those instructions to Co-defendant LUMLEY; hence, the two cellular phones.  Defendant intended to give Co-defendant LUMLEY the final destination instructions from A, then leave.

Br. in Supp. of Pet., Appx. A, Sentencing Memorandum, at 2-4.  Counsel argued in the memorandum that these facts showed that petitioner acted under duress, was trying to get out of the marijuana business, and had no knowledge of the contents of the package.  Counsel argued that court should therefore depart from the mandatory minimum 20 year sentence to which he was subject.  *See id.* at 5, 8.

Petitioner contends that the disclosure of this confidential information was unauthorized and adversely affected the trial court's sentence.  Therefore, he argues, counsel was ineffective for including this information in his sentencing memorandum.  The trial court rejected petitioner's claim, reasoning:

The final ineffective assistance of counsel argument is that Mr. Freeman filed a sentencing memorandum which actually incriminated the defendant and it is true to some extent it did, but it's important to bear in mind that the defendant had already been convicted.  He couldn't be incriminated anymore than he already was.  All Mr. Freeman was trying to do was present the theory to this Court that perhaps Mr. Gonzalez acted out of duress rather than–than an intent to sell cocaine and make a whole lot of money and that certainly is a legitimate sentencing consideration.

27

> The–the case law he cited in–in the memorandum, suggested that the extent of the defendant's involvement in the crime could be a factor that the Court would look at in deciding whether or not to depart downward from that mandatory twenty years sentence.  So, once again, it's a strategic decision that counsel made.  Therefore, I do not believe that a case of ineffective assistance has been shown.

Mot. for New Trial Tr., at 191-92.  The Court should conclude that this determination was reasonable.

To the extent that petitioner bases his claim principally on the counsel's violation of the attorney-client privilege, that violation alone does not mandate habeas relief.  "The attorney-client privilege is a creation of the common law, not the Constitution," and thus a violation of the privilege alone is insufficient to warrant habeas relief.  *Lange v. Young*, 869 F.2d 1008, 1012 n.2 (7th Cir. 1989); *accord Smith v. Moore*, 137 F.3d 808, 819-20 (4th Cir. 1998); *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985); *cf. Maness v. Meyers*, 419 U.S. 449, 466 n.15 (1975).[1]  Therefore, counsel's conduct is analyzed under the ordinary *Strickland* framework.

Under that framework, petitioner cannot show that counsel's performance was deficient, or that he was prejudiced by counsel's statements in the sentencing memorandum.  As to deficient performance, the trial court correctly observed that petitioner had already been convicted, and thus was not prejudiced with criminal liability by counsel's statements.  Counsel made a reasonable plea for leniency based on the information disclosed, which in counsel's view established that petitioner was acting under duress and not for profit, desired to leave the marijuana business, and had no

---

[1] "In some situations, . . . government interference with the confidential relationship between a defendant and his counsel may implicate Sixth Amendment rights."  *Clutchette*, 770 F.2d at 1471.  However, this is not such a situation, because the government did nothing itself to interfere with the attorney-client relationship asserted by petitioner.  Thus, the analysis governing claims of governmental interference established by the Supreme Court in *Weatherford v. Bursey*, 429 U.S. 545 (1977), is inapplicable here.  Rather, petitioner's claims are analyzed solely under *Strickland*.

knowledge that the box contained cocaine.  These factors were appropriate considerations for departure from the 20-year mandatory minimum sentence which petitioner faced.  In light of the severe sanction facing petitioner, reliance on this privileged information for a plea of leniency was not deficient performance.

Further, petitioner cannot show that he was prejudiced by counsel's statements in the sentencing memorandum.  The statements, although apparently conceding guilt, did not expose petitioner to criminal liability, as he had already been convicted.  Nor has petitioner alleged that the concessions in the memorandum affected his ability to bring any appellate claims challenging the conviction.  Thus, the statements by counsel were prejudicial only if there is a reasonable probability that, absent the statements, petitioner would have received a less severe sentence.  Petitioner cannot make this showing.  Nothing in the sentencing transcript shows that the trial court based its decision not to impose a downward departure on the information revealed in the sentencing memorandum.  On the contrary, the court based its sentencing decision on petitioner's extensive prior record and the seriousness of the offense.  *See* Sentence Tr., at 17.  Indeed, counsel was somewhat successful in his arguments to the court.  Although the enhancement provision would have allowed the court to double petitioner's sentence, the court ultimately only increased the minimum 20 year sentence by five years.  The court explained that this decision was based in part on a conclusion that a 40-60 year sentence was beyond the scope of petitioner's actual criminal responsibility, *see id*. at 18, as counsel had argued in the sentencing memorandum.

In short, counsel's use of petitioner's statements in the sentencing memorandum was a reasonable plea for leniency in light of the circumstances, and petitioner cannot show that his sentence was negatively affected by counsel's memorandum.  Accordingly, the Court should

conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Denial of Motion for New Trial (Claim III)*

Petitioner next claims that the trial court erred in denying him a new trial based on newly discovered evidence. Specifically, petitioner contends that the alibi testimony of his then-wife, Monica Gonzales, constitutes newly discovered evidence which calls into question the validity of his conviction. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner's claim of newly discovered evidence does not state a claim for relief cognizable on federal habeas corpus review. As the Supreme Court has explained, the "existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief in federal habeas corpus." *Townsend v. Sain*, 372 U.S. 293, 317 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, "the discovery of new evidence alone is not a cognizable ground for habeas relief." *Fell v. Rafferty*, 736 F. Supp. 623, 631 (D.N.J. 1990). Nor can petitioner prevail on this claim by tying his newly discovered evidence to a claim that the evidence establishes that he is innocent of the crime for which he was convicted. A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id*. at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway

30

through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend*, 372 U.S. at 317 ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus.").[2]   Thus, the newly discovered evidence, standing apart from any

---

[2]        It is true that, in *Herrera*, "a majority of the Supreme Court assumed, without deciding, that execution of an innocent person would violate that Constitution." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (en banc) (citing *Herrera*, 506 U.S. at 417 (majority op.); *id.* at 419 (O'Connor, J., joined by Kennedy, J., concurring); *id.* at 430-37 (Blackmun, J., joined by Stevens and Souter, JJ., dissenting)). However, the *Herrera* majority only assumed, for the sake of argument, that "in a *capital case* a truly persuasive demonstration of 'actual innocence' made after trial would render the *execution* of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Herrera*, 506 U.S. at 417 (emphasis added).  Justice O'Connor, joined by Justice Kennedy, likewise limited her acceptance of an actual innocence claim to the death penalty context, explaining that "*executing* the innocent is inconsistent with the Constitution," and that "the *execution* of a legal and factually innocent person would be a constitutionally intolerable event." *Id.* at 419 (O'Connor, J., concurring) (emphasis added). Similarly, Justice White assumed only that "a pervasive showing of 'actual innocence' . . . would render unconstitutional the *execution* of petitioner in this case." *Id.* at 429 (White, J., concurring in the judgment) (emphasis added).  Even the dissent in that case focused only on the Eighth Amendment and due process concerns implicated by the *execution* of an innocent person. *See id.* at 430-37 (Blackmun, J., dissenting).  Thus, the most that may be said is that there may be a free-standing claim of actual innocence available to habeas petitioners who are sentenced to death.  The *Herrera* opinions do not address the issue in the non-capital context; the opinions explicitly focused on the due process and Eighth Amendment concerns inherent in the capital sentencing context; and the Supreme Court has often noted that "the penalty of death is qualitatively different from a sentence of imprisonment, however long," *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (plurality op.), and thus its capital punishment decisions have little applicability outside the capital punishment context. *See, e.g.*, *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *Lankford v. Idaho*, 500 U.S. 110, 125 n.21 (1991) (limiting holding to capital punishment context).  Thus, there is no indication that the language of the *Herrera* opinions would authorize a free-standing actual innocence claim outside the capital punishment context. *See Hunt v. McDade*, No. 98-6808, 2000 WL 219755, at *2 (4th Cir. Feb. 25, 2000); *Coleman v. Newland*, No. C 99-4630 THE (PR), 2001 WL 725388, at *7 n.5 (N.D. Cal. June 21, 2001); *Penick v. Filion*, 144 F. Supp. 2d 145, 152 n.7

underlying constitutional claim, provides no basis for habeas relief.  The only constitutional claim that petitioner has tied to his newly discovered evidence claim is the ineffective assistance of counsel claim, discussed and rejected above.

Finally, the Court may not review the state court's application of its own new trial rules to petitioner's newly discovered evidence claim.  It is well established that habeas review is not available to correct errors of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Thus, absent some underlying constitutional violation, a federal habeas court may not review a state court's denial of a motion for new trial based on newly discovered evidence under the state law standards governing such motions.  *See United States ex rel. Harris v. Reed*, 608 F. Supp. 1369, 1383 (N.D. Ill. 1985); *see also, Lemaster v. Ohio*, 119 F. Supp. 2d 754, 775-76 (S.D. Ohio 2000); *Dickey v. Dutton*, 595 F. Supp. 1, 2 (M.D. Tenn. 1984). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his newly discovered evidence claim.

G.      *Jury Instructions (Claim IV)*

Petitioner next claims that he was denied a fair trial by the trial court's instruction to the jury regarding his prior crimes.  Specifically, he contends that the trial court erred in telling the jury that petitioner had been convicted of possessing and delivering cocaine.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.[3]

---

(E.D.N.Y. 2001).

[3]Respondent contends that this claim is procedurally defaulted due to petitioner's failure to object at trial.  However, this claim is readily resolved on the merits, and thus the Court need not consider the procedural default issue.  *See* part D.1, *supra.*

1.      *Clearly Established Law*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.  *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990).  In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief.  *See Estelle*, 502 U.S. at 71-72.

2.      *Analysis*

Petitioner contends that the trial court erred by instructing the jury that he had been convicted of possessing and delivering cocaine, when there was no evidence presented of such a conviction. Petitioner's claim, however, fails as a factual matter.  The trial court did not instruct the jury that petitioner had been *convicted* of possessing or delivering cocaine.  Rather, the court instructed the jury on the effect it was to give the evidence of defendant's prior *crimes* which had been introduced:

> You have heard evidence that was introduced to show that the Defendant committed prior crimes; possession and delivery of marijuana, and possession and

33

delivery of cocaine.  He is not on trial for these crimes.

      If you believe this evidence, you must be very careful only to consider it for certain purposes.  You may only think about whether this evidence tends to show that the Defendant used a plan or characteristic scheme.

Trial Tr., Vol. III, at 411.  Nowhere in this instruction did the court tell the jury that petitioner had been convicted of any offenses relating to cocaine.  The court merely informed the jury that evidence had been introduced to show that he had committed cocaine related crimes and instructed the jury on the effect of that evidence.  Specifically, the court instructed the jury that it could only be considered for certain narrow purposes, and only if the jury "believe[d] this evidence."

The trial court's instruction was correct as both a factual and legal matter.  Factually, there was evidence presented at trial showing that petitioner had engaged in cocaine related crimes.  *See* Trial Tr., Vol. I, at 154-55; Vol. II, at 287, 311, 329.  Legally, prior crimes evidence is not limited to convictions.  Under the Michigan Rules of Evidence, in certain circumstances and for certain purposes, "evidence of other crimes, wrongs, or acts" may be admissible.  MICH. R. EVID. 404(b).  Nothing in Rule 404(b) limits evidence of other crimes, wrongs, or acts to conduct which resulted in a criminal conviction.  *Cf. United States v. Gonzalez-Lira*, 936 F.2d 184, 189 (5th Cir. 1991) (considering Federal Rule of Evidence 404(b), which is nearly identical to, and upon which was based, the Michigan rule); *Manning v. Rose*, 527 F.2d 889, 894 (6th Cir. 1974).  Because the instruction was both factually and legally correct, petitioner cannot show that the instruction deprived him of a fair trial.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.     *Sufficiency of the Evidence (Claim V)*

Finally, petitioner contends that the prosecution presented insufficient evidence to prove that he delivered cocaine beyond a reasonable doubt.  The Court should conclude that petitioner is not

entitled to habeas relief on this claim.

    1.    *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197,

35

211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Petitioner was convicted of delivery of between 225 and 650 grams of a mixture containing cocaine under an aiding and abetting theory.  The elements of delivery of cocaine are: "1) delivery; 2) of cocaine; 3) which defendant knew was cocaine; 4) in an amount [between 225 and 650] grams; and 5) defendant was not legally authorized to deliver cocaine."  *People v. Dillard*, No. 245182, 2004 WL 981161, at *1 (Mich. Ct. App. May 5, 2004) (per curiam); *see also*, MICH. COMP. LAWS § 333.7401(2)(a)(ii).        Further, MICH. COMP. LAWS § 767.39  abolished the common law distinction between aiders and abettors and principals, and provides that aiders and abettors may be prosecuted and convicted as though they had directly participated in the crime.  *See People v. Palmer*, 392 Mich. 370, 378, 220 N.W.2d 393, 396 (1974).  Aiding and abetting under Michigan law requires proof of three elements: (1) commission of the underlying crime either by the defendant or some other person; (2) acts or encouragement by the defendant which aided or assisted the commission of the crime; and (3) intent on the part of the defendant to commit the crime or knowledge by the defendant that the principle intended to commit the crime at the time aid or encouragement was given.  *See People v. Acosta*, 153 Mich. App. 504, 511-12, 396 N.W.2d 463, 467 (1986) (per curiam).

2.    *Analysis*

Petitioner does not contend that the prosecution's proof was deficient with respect to any element in particular.  Rather, he contends that the prosecution presented insufficient evidence to establish that he was involved in the cocaine delivery at all.   This claim is without merit.

36

Lumley testified extensively as to petitioner's involvement with the cocaine delivery. Specifically, he testified that petitioner arranged the delivery, was present and monitoring Lumley's pickup of the package, and was in telephone contact with Lumley during the pickup. This testimony was sufficient to show that petitioner aided and abetted the delivery of cocaine. Petitioner's contention that Lumley was not credible for various reasons does not alter this conclusion. It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").

It is also immaterial that various aspects of Lumley's testimony–such as his description of the telephone calls with petitioner and petitioner's presence at the scene in a blue Pontiac Grand Am–was not corroborated by other objective evidence such as telephone records. There is no constitutional requirement that the prosecution present all possible evidence in support of its case, and the testimony of a single, uncorroborated witness is generally sufficient to sustain a conviction if the testimony establishes all the elements of the offense. *See Takacs v. Engle*, 768 F.2d 122, 127 (6th Cir. 1985); *Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir. 1985). Thus, the fact that the prosecution did not corroborate Lumley's testimony with other objective evidence that may have existed does not render the evidence insufficient. *See Redwine v. Renico*, No. 01-CV-74802-DT, 2002 WL 31245256, at *6 (E.D. Mich. Sept. 30, 2002) (Roberts, J.); *Davis v. Grayson*, No. 01-CV-73639-DT, 2002 WL 1310603, at *5 (E.D. Mich. May 23, 2002) (Cohn, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

37

I.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                              s/Paul J. Komives_____
                              PAUL J. KOMIVES

UNITED STATES MAGISTRATE JUDGE

Dated: <u>April 14, 2005</u>

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on April 15, 2005.

s/Eddrey Butts
Case Manager